WERNER B. MERTZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mertz v. Commissioner
Docket No. 4206-76.
United States Tax Court
T.C. Memo 1979-197; 1979 Tax Ct. Memo LEXIS 323; 38 T.C.M. (CCH) 823; T.C.M. (RIA) 79197; May 21, 1979, Filed *323 Held: Respondent's deficiency determinations sustained. Petitioner failed to carry his burden to show respondent erred. Held,further: Fraud proved. Werner B. Mertz, pro se. John E. Lahart and William E. Bonano, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax pursuant to section 6653(b) [1] as follows: Year
Deficiency
Section 6653(b)
1971
$ 2,963.17
$ 1,481.59
1972
1,475.12
737.56
1973
641.63
320.82
Respondent later filed an Amendment to Answer to petition as amended in which he asks for increased deficiencies and penalties. *324 Respondent now asserts deficiencies of $3,106 in 1971, $1,539 in 1972, and $1,199 in 1973 and section 6653(b) penalties of $1,553, $769.50 and $599.50. The issues for our decision are as follows: (1) whether petitioner failed to report income in the amounts of $7,262, $12,824 and $10,019 for the years 1971, 1972 and 1973, respectively; (2) whether the underpayment for each of the years 1971 through 1973 was due to fraud; (3) whether petitioner failed to claim ordinary and necessary business expenses in excess of the additional amounts of $745.82, $7,688.81 and $6,521.89 allowed by respondent for the years 1971, 1972 and 1973, respectively; (4) whether specific business expenses reported by petitioner in the amounts of $4,176.38, $2,952.14, and $2,892 for the years 1971, 1972 and 1973, respectively, were ordinary and necessary business expenses; (5) whether petitioner should be allowed a standard deduction of $1,500 and $1,461.02 for the years 1971 and 1972, respectively; (6) whether petitioner should be allowed itemized deductions in the amount of $1,246.90 for the year 1973; (7) whether petitioner is entitled to a deduction for returns and allowances in the amount of $7,298 for *325 the year 1971; and (8) whether petitioner should be allowed investment credits in the amounts of $392 and $53.41 for 1971 and 1972, respectively. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, along with attached exhibits, are incorporated herein by this reference. The petitioner [2] and his wife timely filed joint income tax returns for each of the years 1971 through 1973. [3] They resided in Thousand Palms, California, at the time of filing the petition herein. During the years 1971 through 1973, the petitioner owned and operated a tree trimming business under the name of Mertz Tree Service. The business was *326 conducted as a sole proprietorship. Petitioner reported net profits from his business and taxable income on his income tax returns as follows: Reported
Taxable
Reported and paid Year
Business Profit
Income
income taxes
1971
$ 148 $ 0
$ 0
1972
2,025
0
0
1973
7,141
1,490
214
Petitioner's income tax returns for the years 1971 through 1973 were prepared by Clarence A. Curtis, doing business as Curtis Income Tax Service. During the years in issue, petitioner maintained a business bank (checking) account with the Bank of California, Colton office, in the name of W. Mertz Tree Service. For the purpose of reporting gross business receipts for each year, 1971 through 1973, petitioner provided the return preparer only with the bank statements from this account. Thus, the total yearly deposits to that account are identical to the reported gross receipts for each of the years 1971 through 1973. [4]
In addition to the account discussed above, petitioner maintained, during the years in issue, a checking account at the Palm Desert Branch of *327 the Security Pacific National Bank in the name of Mertz Tree Service. Respondent determined that this account was a business account and that deposits to it (in general) constituted taxable business receipts. During the years in issue, petitioner deposited the following net amounts into the Security Pacific National Bank account: Year
Amount
1971
$5,114
1972
9,215
1973
7,126
On June 17, 1971, petitioner deposited a check for $1,780, but the bank deposit ticket showed cash in the amount of $780 was withheld, leaving a net deposit to the account of $1,000. Respondent, therefore, added $780 to the amount shown in 1971 as income received by petitioner. Respondent subtracted a $50 cash deposit from the total amount determined to be taxable business receipts because the revenue agent could not determine its source. The agent also could not determine the source of another check for $157 paid to a Mead Henry and deposited to the account on October 26, 1971. Respondent reduced taxable deposits by this check. Therefore, respondent determined from this account that petitioner had additional taxable business receipts in 1971 of $5,687 ($5,114 plus $780 less $50 *328 and $157). Respondent also included an additional $306 in 1972 as a taxable business receipt generated from the Security Pacific National Bank account. This was due to a transaction on May 17, 1972 in which a check for $706 was negotiated but of which only $400 was deposited. Several deposits to the account totaling $659, however, could not be identified by the revenue agent as business receipts. Most of these deposits appeared to be checks for rent; [5] nonetheless, respondent did not include any of these amounts as taxable business receipts generated from the account. Thus, taxable business receipts for 1972 determined from this account totaled $8,862. Respondent also removed from his computation a cash deposit made into the account on May 16, 1973, in the amount of $500 because he could not determine its source. Similarly, *329 two checks deposited on December 13, 1973 into the account from the Cal-Farm Insurance Company totaling $87 could not be identified as business receipts and were not included in the computation. On June 7, 1973 a check of $1,480 was deposited into the account but cash of $480 was withheld, leaving a net deposit of $1,000 shown on the bank statement. Respondent added this $480 to his computation. Finally, a check in the amount of $3,580 made out to the Mertz Tree Service by Gardening and Lawn Renovation was deposited on September 13, 1973. Petitioner withheld cash in the deposit transaction and only $580 was actually put in the account. Respondent, therefore, added the $3,000 to the computation. Thus, total business receipts deposited or negotiated to this account in 1973 were determined to be $10,019. In addition to the deposits to the bank accounts mentioned above, petitioner received warrants payable to the Mertz Tree Service from the City of Palm Springs, California, for services he rendered to the city. Petitioner negotiated these warrants for cash. These warrants were in the following amounts: Year
Amount
1971
$1,575
1972
3,962
Respondent determined *330 that these warrants constituted (unreported) taxable income.Thus, for the years 1971 through 1973, respondent determined that petitioner understated his business receipts on his income tax returns in the amounts of $7,262, $12,824, and $10,019, respectively. Petitioner also maintained a small savings account at the Bank of California in 1970. During the course of respondent's investigation, petitioner was requested by the revenue agent conducting the audit in July 1974 to provide all records used in preparing his 1972 return. Petitioner furnished the revenue agent with bank statements and cancelled checks only of his Bank of California account. On March 19, 1975, the revenue agent and a special agent met with petitioner and his wife. When asked how he kept his records, petitioner stated that he recorded his gross receipts from the amount of bank deposits made to his Bank of California account and that he recorded his expenditures from the cancelled checks. He stated that no cash was withheld from the deposits. Petitioner also maintained that he had no other bank accounts. However, when confronted by respondent with the fact that respondent was aware of their account at *331 Security Pacific National Bank, petitioner and his wife admitted to its existence. Mrs. Mertz admitted that one or two business receipts may have been deposited in the account and that the account was used to pay for insurance, clothing and grocery bills. She also stated that she won $1,100 in 1971 and $400 in 1972 or 1973 gambling in Las Vegas and that these winnings were placed into the account. Mrs. Mertz stated further that their return preparer was unaware of the account and that they were trying to keep the account secret. Petitioner then revealed that all records pertaining to the Security Pacific National Bank account had been destroyed because he and his wife did not want the account to be detected. He also stated at the interview that he never had more than $500 cash on hand at the beginning of any year. Only two deposits of cash were made to the Security Pacific National account during the years in issue ( $50 on 7/21/71 and $500 on 5/16/73). The remaining deposits were made by check. Additionally, petitioner withheld cash from his deposits to this account on several occasions. Petitioner did not make any returns or allowances in his tree trimming business *332 during 1971 or any other year. ULTIMATE FINDINGS OF FACT (1) The deficiencies in income taxes as determined by respondent in the statutory notice of deficiency and the increased deficiencies claimed by respondent for the years 1971 through 1973 are correct. (2) A part of the underpayment of taxes for each of the years 1971, 1972 and 1973 was due to fraud. OPINION Respondent contends that petitioner fraudulently failed to report business receipts deposited to the Security Pacific National Bank and business receipts received from the City of Palm Springs. Petitioner denies that there was an account in the name of Mertz Tree Service at the Security Pacific National Bank. Rather, he contends that the only account at that bank was a checking account in the name of Helen Mertz which was used for groceries and other personal expenses. It is clear that the Mertz Tree Service account at Security Pacific National Bank did exist. The record contains ledger sheets for the three-year period 1971 through 1973 showing the account's activity. [6] Respondent traced business receipts to this account. He gave petitioner every benefit in determining his business receipts using the *333 bank deposit analysis. Only tree service business receipts were used in the recomputation of petitioner's income. This included those receipts negotiated through the Security Pacific National Bank which respondent determined to be tree service business receipts plus the warrants issued by the City of Palm Springs for services rendered by the proprietorship. Thus, petitioner failed to report the following amounts of business income: [7]
*334 1971
1972
1973
Checks negotiated through the
Security Pacific National Bank
$5,687
$ 8,862
$10,019
City of Palm Springs Warrants
1,575
3,962
0
$7,262
$12,824
$10,019
We also believe respondent has carried his burden to show that petitioner's underpayments of income taxes for each of the years in issue were due to fraud. The existence of fraud is a question of fact which must be ascertained upon an evaluation of the entire record. . It consists of an intentional wrongdoing designed to evade tax believed to be owing. , revg. ; . The burden of proving fraud is on the respondent and he must do so by clear and convincing evidence. Section 7454(a); . Petitioner did not report as income any business receipts deposited to the Security Pacific National Bank during the three years in issue. Petitioner supplied his return preparer with *335 the records pertaining to the Bank of California account only, and those were the only business receipts reported on the return.Nor did he report receipts earned from the City of Palm Springs in 1971 and 1972. A consistent understatement of income over a number of years is effective evidence of fraudulent intent. ; . Similarly, the destruction of the bank records relating to the Security Pacific National Bank account is indicative of fraudulent intent. . When questioned about how he handled business receipts, petitioner falsely stated that all business receipts for the years in issue had been deposited to the Bank of California account and that he maintained no other account. We believe these false statements to respondent's agents also evidence a fraudulent intent. . Additionally, we believe respondent has shown fraud in each of the years by showing specific instances of fraudulent nonreporting. In 1971 and 1972, petitioner *336 received taxable business receipts from the City of Palm Springs. Petitioner knew they were taxable and yet failed to report them, instead negotiating them for cash. And, with respect to 1973, we believe the record contains at least one specific instance of fraudulent nonreporting. That instance was a check made out to the Mertz Tree Service by Gardening and Lawn Renovation, undoubtedly a business receipt, which was not reported on petitioner's 1973 return. Petitioner was obviously aware of the business character of this receipt and yet deposited it in the Security National account (withholding $3,000 in cash), the account which he did not turn over to his return preparer. Of the remaining issues, petitioner challenges only respondent's adjustments relating to certain business expenses. More specifically, he claims that he was not allowed a deduction for all the depreciation to which he was entitled, that respondent misallocated his utilities between personal and business use, and that respondent did not allow a $5,500 loss relating to some palm trees which he bought and planted for customers in 1973, but which later died and had to be replaced. With respect to depreciation, *337 petitioner claimed a lump-sum amount of depreciation for each year of the three in issue. There was absolutely no identification of any amounts claimed on the return as relating to any particular asset on which the depreciation was supposedly taken. Although petitioner testified at trial about specific assets on which he was allowed no depreciation, in the notice of deficiency respondent actually allowed petitioner additional depreciation in the amounts of $315.15, $1,831.43, and $2,023.43 for the years 1971 through 1973, respectively. It is incumbent upon petitioner to come forward with more than uncorroborated allegations that he was not allowed depreciation for certain assets, especially when the confusion is of his own making and respondent allowed depreciation in a greater amount than petitioner originally claimed on his return. Petitioner also contends that respondent misallocated the utilities, allocating too much to his personal use. Respondent allocated 90 percent of the phone use to business and we cannot find anything in the record which would indicate this was not proper. Petitioner's major complaint seems to be with respect to the water and electricity of which *338 respondent allocated 25 percent to business use. However, petitioner has not introduced any evidence which would support an allocation greater than that allowed by respondent and we have no choice but to sustain respondent's allocation. Finally, petitioner claims he was not allowed a deduction for palm trees which died and on which he was forced to absorb a loss. However, given petitioner's method of accounting, even were we to assume the accuracy of petitioner's claim as to such a loss, in all probability he deducted the cost of those palm trees upon their acquisition (as a cost of goods sold) and as such he would not be entitled to a deduction when they died. Absent proof as to how he handled their cost of acquisition, we cannot allow him a deduction for that cost upon their destruction. Because petitioner has not challenged any of respondent's other determinations, we must uphold respondent on the remaining issues. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable years in issue.↩
2. It is not clear why petitioner's wife did not join in the petition, since the notice of deficiency was issued to them jointly. ↩
3. The statutory notice of deficiency was issued by respondent on February 13, 1976. Absent fraud or a greater than 25 percent omission from income reported on petitioner's returns, it would appear that the statute of limitations would foreclose assessment of any deficiency for 1971. Petitioner did not raise the statute of limitations as a defense, however, and it is therefore not in issue.↩
4. ↩ Year
Reported Gross Recipts
1971
$28,891
1972
33,293
1973
36,172
5. Petitioner admitted to the revenue agent that he had a house in California where his wife's parents lived, and that he received $65 monthly rent from them. He also told the agent that he did not tell his return preparer about this rental income. Respondent did not include in his reconstruction of petitioner's income any amounts received as rent.↩
6. On reply brief, petitioner states that the bank and the respondent invented this account. However, we fail to see, and petitioner has not pointed out any evidence to show the account was other than that of Mertz Tree Service. The checks deposited to the account which were determined to be taxable business receipts were made out to Mertz Tree Service as payee. Respondent excluded all deposits which he could not determine to be business receipts. Further, regardless of the name on the account, the issue here is the origin of the deposits. ↩
7. Although it is not clear to what end, petitioner claims that he had a cash horde of $40,000 at the beginning of the the years in issue.However, because respondent has shown business receipts were the source of the deposit activity of the Security Pacific Bank account, it is unnecessary to address the issue petitioner raises as to the existence of a cash horde.↩